Gregory A. GALBO, Plaintiff,

v.

Lori TIRRI, et al., Defendant.

Civil Action No. 97–1827.

United States District Court,
D. New Jersey.

July 15, 1997.

Gregory A. Galbo, Nanuet, NY, pro se.

Carmen Messano, Prosecutor of Hudson County, Grant McGuire, Jersey City, NJ, for Defendant.

## *OPINION*

WOLIN, District Judge.

This matter is opened before the Court upon the petition for a writ of habeas corpus of Gregory Galbo ("Galbo"). The Court has decided the petition upon the written submissions of the parties pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons given below, the Court will deny this petition, and dismiss it with prejudice.

## BACKGROUND

Galbo has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a).[1] In support of his petition, Galbo claims that a February 28, 1997 court order issued against him in Hudson County, New Jersey placed an unconstitutional restraint on his liberty. In the Order, Superior Court Judge Baber directed Galbo to forward late child support payments to his ex-wife through the Bergen County Probation Department ("Probation Department"). According to the Order, Galbo had fallen behind in making the support payments since his 1991 divorce, and was in arrears for $42,-378.00.[2] *See Galbo v. Gordon (f/m/a) Galbo,* No. FM–30037–88 at 2 (N.J.Super.Ct. Ch. Div. Feb. 28, 1997).

Galbo claims, specifically, that the Order directing him to forward monthly payments through the Probation Department places

---

1. This statute provides:

    The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
    28 U.S.C. § 2254.

2. Galbo was also directed to reimburse his ex-wife $2,419.79 for their child's medical expenses.

unconstitutional restraints on his liberty. Because the Court finds that the Order directing Galbo to make the child support payments through the Probation Department does not impose a restraint on his liberty so pervasive as to fulfill the "custody" requirement of 28 U.S.C. § 2254(a), Galbo lacks standing to bring his petition and the Court must dismiss it.

## DISCUSSION

■ An applicant for a writ of habeas corpus must be in state custody. *See* 28 U.S.C. § 2254(a). "The sole justification of federal habeas jurisdiction for a state prisoner is the statutory mandate that the applicant be a 'person in custody pursuant to the judgment of a State court.'" *United States ex rel. Dessus v. Pennsylvania*, 452 F.2d 557, 560 (3d Cir.1971) (quoting 28 U.S.C. 2254(a)). "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.... [I]ts use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." *Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574–75, 36 L.Ed.2d 294 (1973).

■ Because Galbo has not identified a restraint on his liberty so pervasive as to warrant federal habeas review, Galbo lacks standing to bring his claim to a federal habeas court. Galbo asserts that the February 28, 1997 Order demanding he forward payments through the Probation Department places him in state custody for federal habeas purposes. This Court, however, does not agree that Galbo is detained within the meaning of 28 U.S.C. § 2254(a) for purposes of federal habeas review.

In his Memorandum and Certification in support of his application for habeas corpus relief, Galbo cites cases in which individuals on probation and parole were able to pursue habeas relief, despite the fact that they were not incarcerated. *See* Mem. and Certif. at 2. In those cases, however, the individuals in question had been previously incarcerated, and had filed their habeas petitions while in prison. The issue in those cases was wheth-

er the petitioner's habeas writ may be reviewed, despite the fact that the petitioner had been released to a term of probation or parole, and was no longer physically confined. Courts have chosen to review these petitions because the terms of probation and parole act as significant restraints on liberty so as to warrant federal habeas review. *See Carafas v. LaVallee*, 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968); *Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1963).

History provides many examples of the use of the writ for purposes other than to secure the release of the incarcerated petitioner; in each of the examples, however, the state action severely restrained the petitioner's liberty.

In *Jones v. Cunningham*, the Supreme Court surveys the English and American historical usage of the writ habeas corpus. *See* 371 U.S. at 240, 83 S.Ct. at 375–76. The Court cites an English use of the writ in 1722 by a husband whose wife was being kept from him by guardians against her will. *See id.* at 238–39, 83 S.Ct. at 374–75 (observing that the test was whether "she was 'at her liberty to go where she please[d]'"). The Court also observes that the writ of habeas corpus was used in England in 1763 to secure the production in court of an indentured servant who had been assigned by her master to another man "for bad purposes." *See id.* (observing that she was "discharged from all restraint" and at liberty to move about as she wished). And the Court notes that the writ was used in the early 1800s by an English parent to obtain his children from his spouse, even though the children were not imprisoned, or held against their will. *See id.* at 239, 83 S.Ct. at 375. Additionally, the writ of habeas corpus has been used in the United States to test the exclusion of aliens seeking entry into the country and the legality of induction into the armed forces, and has continued to be utilized by parents seeking child custody. *See id.* at 240, 83 S.Ct. at 375–76.

In the instant case, however, Galbo is not severely restrained. Galbo is not being forced to act or refrain from acting in any

way, other than to fulfill the terms of a court mandated civil judgment, ordering child custody payments. The Court's use of the Probation Department as the channel through which the payments should be made imposes no restraint on Galbo.

Galbo is not on probation, as he asserts in the letter memorandum in support of his habeas petition. *See* Mem. and Certif. at 2. Rather, he is not required to report to any specific individual to allow monitoring of his activities. Nor is he restrained from pursuing a given type of employment or from occupying a particular residence. Galbo is not made to submit to random drug tests or counseling. Thus, Galbo does not suffer under any of the hallmarks of custody under probation.

Nor is Galbo restrained from spending time with his child. Galbo enjoys ample visitation opportunities.[3]

Because Galbo has not demonstrated any cognizable restraint on his liberty imposed by the Superior Court's directive to make child support payments through the Probation Department, Galbo is not in "custody" for purposes of federal habeas review, and the Court will not entertain his claim.

## CONCLUSION

For the foregoing reasons, Galbo's 28 U.S.C. § 2254 motion will be denied with prejudice.

---

**3.** The terms of the child custody arrangement were set forth in the final judgment of divorce, in 1991. *See Galbo v. Galbo,* No. FM–30037–88 at 3–4 (N.J.Super.Ct. Ch. Div. Feb. 1, 1991).